## Murray *against* Guilford.

Whether land be seated or unseated, with regard to its being subject to sale by the treasurer for taxes, must be judged of as of the time when the assessment was made; if it be unseated then, a subsequent occupation of it, although in the same year for which the tax was assessed, and when the duplicate was in the hand of the collector, will not defeat a treasurer's sale.

*Quære.*—Whether the limitation of five years, provided by the act of 1804, in which suit may be brought, is applicable to sales made under the act of 1815.

ERROR to the district court of *Allegheny* county.

The executors of D. L. Murray against Robert Guilford. This was an action of ejectment for a tract of land. The plaintiffs gave in evidence a patent to their testator for the land.

The defendant claimed, under a treasurer's deed, in pursuance of a sale for the payment of taxes. He gave in evidence an assessment made in the fall of 1818, for the tax of 1819; county tax 94 cents, and road tax 2 dollars 35 cents. It was sold for these taxes in June, 1822. This suit was brought to April term 1837. To rebut this claim, the plaintiffs proved that, in May 1819, they leased the land to a tenant for eight years, to commence on the 1st of April 1820; that the said tenant went on the land in the summer of 1819, and built a cabin and a stable, and that he moved into the cabin about the last of August, or beginning of September 1819. They contended, therefore, that as the land became seated in 1819, and the collectors might have found property on the premises from which to levy the tax during the year, and before he made his return to the commissioners of lost taxes and unseated lands, (the 3d of February 1820,) it could not be legally sold for taxes, and therefore the deed is void.

*Grier*, president, thus charged the jury:—As the leading facts in this case are not disputed, and there is no material contradiction in the testimony, the court, in delivering their opinion, will assume them to be true as proved. The act of the 13th of March 1815, which directs the mode of selling unseated lands, gives the owner two years, in which he may redeem it; and if redeemed, or offered to be redeemed within that time, or if the taxes can be proved to have been paid previous to the sale, " then, and in either of these cases, said owner or owners shall be entitled to recover the same by due course of law—but in no other case, and on no other plea shall an action be sustained: and no irregularity in the process or otherwise, shall be construed or taken to affect the title of the purchaser, but the same shall be declared to be good and legal."

[Murray v. Guilford.]

Now, it is not pretended in this case, that the land has been redeemed, or offered to be redeemed within two years; or that the taxes for which it was sold were paid.

But notwithstanding the very strong and exclusive expression of the act of assembly, that in no other case, and on no other plea, an action should be sustained; yet our courts have decided that the owner may show that the land was not unseated, or that it never was assessed; and for this reason—that the law gave the treasurers power to sell only unseated lands, and to sell them for taxes; therefore, before jurisdiction attached, it must appear that the lands are unseated, and have been assessed somehow or other, regularly or irregularly. Stewart *v.* Showerfelt, 13 *Serg. & Rawle* 371; M'Call *v.* Lorimer, 4 *Watts* 351.

Taxes on seated lands are a personal charge on the owner, and must be collected from him or his tenant; and if no personal property can be found on the land to distrain or sell for the taxes, the collector may take the body of the owner; but as the taxes are not a lien on the land, the commissioners or treasurers have no power to sell the land. On the contrary, a tax on unseated land is a lien on the land alone, and is not a personal charge against the owner or any other person.

Of course the situation of the land at the time the assessment is made and the tax charged, must determine the liability to pay. If the land be seated at that time, the commissioners or assessors can not make the land chargeable, and, of course, the treasurer can have no power to sell it. On the contrary, if the land be then unseated, and assessed and taxed as such, the tax is not a personal charge on the owner, and the collection of it can be enforced in no other way but by a sale of the land on which it is a lien or charge. The fact that the land becomes afterwards seated, either by the owner or an intruder, will not alter the nature of the charge, or the remedy to enforce the collection of the tax. And in this all the cases agree.

In Kennedy *v.* Wilson, 1 *Watts* 505, Kennedy, J., says: "If the improvement had been made before the assessment of the taxes for which the land was sold, &c., I would have considered the land seated, and the sale made of it for taxes void."

In the case of Harbison *v.* Jack, 2 *Watts* 124, the land had been seated for twenty years before the assessment, and was only vacant by chance at the time of the assessment.

In Shaffer *v.* M'Coble, 2 *Watts* 421, the land was seated at the time of the assessment.

In Owens *v.* Vanhook, 3 *Watts* 260, it is said the land must not only be unseated, but assessed as unseated.

In Keating *v.* Williams, 5 *Watts* 382, the lot was seated and had been assessed as seated, and therefore the sale was void.

In Kennedy *v.* Daily, 6 *Watts* 269, Rogers, J., says: "In all controversies, as in the present instance, it becomes an important

VIII.—2 w

inquiry whether the lands were seated or unseated at the time they were assessed."

And finally, in Robinson *v.* Williams, 6 *Watts* 281, it is conceded that it is not a valid objection to a treasurer's deed for unseated lands sold for taxes, that the land became seated several years before the sale of it—were unseated when the taxes were assessed.

Now, in this case, it is not disputed that the land was unseated when the tax was assessed. In such cases it is not usual or necessary to include such taxes in the list or duplicate given to the collector. See 6 *Watts* 285; 3 *Watts* 261. They are usually paid to the treasurer.

Neither would the collector have power to enforce the collection of these taxes on unseated lands, (although put in his duplicate,) against the person of the owner or improver of the land, who may have entered into the possession since the duplicate came into his hands for collection.

It was decided in this court, in the case of Watson *v.* Stinson, that in a case like the present, where the land was unseated and assessed as such, and (as is the custom in this country) the tax was included in the collector's duplicate with other taxes on unseated lands, that a payment made to him by a person who had entered or intruded into the land before the end of the year, was a good payment of the tax, and that the treasurer could not afterwards sell the land; that the warrant of the commissioners, in the collector's duplicate, was sufficient authority to him to receive the tax and give a valid receipt for it, or a discharge.

This case was afterwards affirmed by the supreme court and an opinion delivered by Huston, J., which has not been reported. But it only decides that when the tax on unseated lands is included in the collector's duplicate, he can legally receive them; not that he has power to compel any person, who may have come into possession at the end of the year, to pay them; nor that the land was not liable, if he failed to collect it of such person.

On the undisputed and admitted facts of this case, therefore, to wit, that the tract was unseated when it was assessed as unseated; that it remained so when the collector went on the land to collect the tax, both in May and August; that it became seated in the latter end of August or beginning of September 1819; that the tax so assessed has never been paid; the court instruct you that, if you believe these to be the facts, you should find for the defendant.

In this view of the case it is unnecessary to decide the other point made by defendant's counsel, viz., that the plaintiff's recovery is absolutely barred by the five year limitation, the defendant having been in possession for more than ten years.

I do not know that the limitation of ten years, contained in the act of 1804, has ever been decided to apply to sales made since 1815; nor can I say that my opinion is so. But as the defendant's counsel have relied upon it and consider it tenable, and as the

[Murray v. Guilford.]

plaintiff's counsel intend taking the case to the supreme court on an exception to our opinion on the first point, I will rule this against him also, in order that the whole case may be finally settled.

To this charge of the court, the plaintiff's counsel excepted.

*Baird*, for plaintiff in error, cited 13 *Serg. & Rawle 365.*
*M'Candless* and *Shaler, contra.*

The opinion of the Court was delivered by

Rogers, J.—For the reasons given by Mr Justice Grier, we are of opinion the judgment should be affirmed on the first point. The case cannot be distinguished from Robinson *v.* Williams, 6 *Watts* 281. Although the collector might have *received* the unpaid tax from the tenant who, after its assessment, occupied the land, yet he had no authority to *compel* payment, as a tax assessed on unseated land is a lien on the land alone, and is not a personal charge against the owner or his tenant. The distinction, therefore, on which the plaintiff in error relies, that the collector had not made his return before it became a seated tract, can not avail her. This is a very hard case, it is true, but not more so than Robinson *v.* Williams. It is not for us to make, but to expound the law, and there is nothing which conduces more to the safety and prosperity of our citizens than a steady and uniform adherence to adjudged cases, which are the landmarks of the law.

As this disposes of the whole case, we decline noticing the second point.

Judgment affirmed.